UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:25-cv-03375-WLH-MAA | Date | January 8, 2026 |
|---|---|---|---|
| Title | *Yunxiang Qiao et al v. James Janecka et al* | | |

| Present: The Honorable | WESLEY L. HSU, United States District Judge |
|---|---|

| Lesbith Castillo | None |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** **(IN CHAMBERS) ORDER RE PETITIONERS' RENEWED EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER [6]**

The Court is in receipt of Petitioners Yunxiang Qiao and XiaoHong He's Renewed *Ex Parte* Application for Temporary Restraining Order (the "Renewed Application"). (Renewed Application, Dkt. No. 6). On December 18, 2025, the Court denied Petitioners' initial *Ex Parte* Application for Temporary Restraining Order (the "First Application") due to procedural deficiencies. (*See* Order Re Petitioners' First Application, Dkt. No. 5). The Court granted Petitioners leave to file an amended Application to cure the issues identified no later than January 5, 2026. (*Id.*). The Court also ordered Respondents to respond to any amended application no later than 5:00 p.m. on January 7, 2026. (*Id.* at 2-3). The Court further ordered that Petitioners shall remain within the District pending the resolution of the amended Application. (*Id.*). No opposition was filed. As such, the Court deems the Application unopposed. For the reasons explained herein, the Court **GRANTS** the Renewed Application.

//

//

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

I. **BACKGROUND**

The below factual background is taken from information contained in the declarations of Zach Chen, interpreter for Petitioners Qiao and He (collectively, the "Chen Declarations").[1] (*See generally* Declaration of Zach Chen in Support of Petitioner He's Application ("Chen Decl. for Petitioner He"), Dkt. No. 6 at 31-32; Declaration of Zach Chen in Support of Petitioner Qiao's Application ("Chen Decl. for Petitioner Qiao"), Dkt. No. 6 at 33-34). Because the Petition for Writ of Habeas Corpus (Dkt. No. 1) and the Renewed Application itself is unverified, the Court cannot rely on the facts therein. (*See* Petition, Dkt. No. 1; *see also* Renewed Application). To be verified, the Petition must be signed under penalty of perjury by the petitioner or by a person authorized to sign it for the Petitioner under 28 U.S.C. § 2242. *See* 28 U.S.C. § 2242 ("Application for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended or by someone acting in [their] behalf").

Petitioner Yunxiang Qiao, a Chinese national, entered the United States two years ago, and was released by immigration authorities shortly thereafter. (Chen Decl. for Petitioner Qiao ¶¶ 2, 4). Petitioner Qiao applied for asylum, citing the fear that caused her to escape from her native country and prevents her from returning. (*Id.* ¶¶ 5-6). An immigration judge granted Petitioner Qiao withholding of removal, resulting in Petitioner's supervised release. (*Id.* ¶¶ 5, 7). Petitioner Qiao reported to Immigrations and Custom Enforcement (ICE) pursuant to that order of supervision. (*Id.* ¶ 7). During a check-in with ICE officials in Los Angeles on December 5, 2025, an ICE officer

---

[1] Zach Chen prepared these declarations "at the request and with the permission" of Petitioners as their authorized interpreter. Petitioners "confirmed to [him] that all the translated information from Mandarin to English and vice versa in [these] document[s] [are] true and correct and adopted the contents of the declaration as [their] own." Mr. Chen signed these declarations under penalty of perjury. (*See* Renewed Application at 32, 34).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

informed Petitioner Qiao of an outstanding removal order and detained her without regard for the withholding of removal issued by an immigration judge previously. (*Id.* ¶ 8). Petitioner Qiao was handcuffed and transferred to the Adelanto Detention Center the following day. (*Id.* ¶¶ 9-10). Since her initial detention, Petitioner Qiao has endured worsening medical conditions resulting from sleeplessness, low blood pressure and rectal bleeding. (*Id.* ¶¶ 13-16). Petitioner Qiao asserts the detention facility does not provide proper medical treatment. (*Id.* ¶ 16). To date, Petitioner Qiao remains in ICE custody.

Petitioner XiaoHong He, also a Chinese national, entered the United States over seven years ago. (Chen Decl. for Petitioner He ¶¶ 2, 4). Similar to Petitioner Qiao, Petitioner He cited a fear of returning to her country and applied for asylum. (*Id.* ¶¶ 6, 8). She was also granted withholding of removal, resulting in her supervised release. (*Id.* ¶¶ 7, 9). Petitioner He reported to ICE pursuant to that order of supervision. (*Id.* ¶ 9). During a check-in with ICE officials in Los Angeles on July 2, 2025, an ICE officer informed Petitioner He of an outstanding removal order and detained her without regard for the withholding of removal issued by an immigration judge previously. (*Id.* ¶ 10). Petitioner He was handcuffed and transferred to the Adelanto Detention Center the following day. (*Id.* ¶ 12). While detained, an ICE officer informed Petitioner He that they intended to send her to a third country. (*Id.* ¶ 13). Petitioner declined to consent. (*Id.*). Throughout her detention, Petitioner has suffered from medical problems related to her breathing, heart discomfort and bleeding associated with her uterine condition. (*Id.* ¶¶ 16-20). To date, Petitioner He remains in ICE custody.

On December 13, 2025, Petitioners filed the underlying habeas petition, contending their sudden detention by Immigrations and Customs Enforcement ("ICE") is unlawful and punitive, in violation of their due process rights, the Immigration and Nationality Act ("INA") and its regulations and the Administrative Procedure Act

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

("APA"). (*See generally* Petition; *see also* Renewed Application at 4). Petitioners "do not challenge the ability or decision of Respondents to remove them to [a] Third Country." (Renewed Application at 29 n.2). Rather, they challenge the "legality of their current detention, and the lack of process they suffered at the hands of Respondents when they were re-detained." (*Id.*).

## II. DISCUSSION

### A. Legal Standard

A TRO may be issued upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). In determining whether to issue a TRO, courts apply the four Winter factors (the "*Winter* Factors"), which also guide the evaluation of a request for a preliminary injunction: (1) likelihood of success on the merits; (2) irreparable harm in the absence of preliminary relief; (3) the balance of equities; and (4) the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001) (explaining that the analysis for a TRO and a preliminary injunction are "substantially identical"). If the Court issues a TRO, it must also issue an order to show cause why a preliminary injunction should not issue. L.R. 65-1.

### B. Analysis

#### 1. *Exhaustion of Administrative Remedies*

The Court *sua sponte* addresses the administrative exhaustion issue that often rears its head in these habeas matters. The INA specifically requires administrative exhaustion of appeals of final removal orders. *See* 8 U.S.C. § 1252(d)(1). Here, however, Petitioners challenge only their detention without adequate process rather than any final removal order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Nevertheless, where Congress has not clearly *required* exhaustion, courts may impose it as an act of "sound judicial discretion." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). "When exercising our discretion, we must apply exhaustion principles 'in a manner consistent with congressional intent and any applicable statutory scheme.'" *Wang v. Reno*, 81 F.3d 808, 814 (9th Cir. 1996) (*quoting McCarthy*, 503 U.S. at 144.).

In *Wang v. Reno*, the Ninth Circuit held that district courts have properly exercised jurisdiction over due process claims even where a petitioner has not exhausted his administrative remedies in connection to his excludability. *See Wang*, 81 F.3d at 814. ("Where Congress has not specifically mandated exhaustion, we conclude that consistent with congressional intent and the INA, the district court properly exercised jurisdiction over [Petitioner's] due process claim even though he had not exhausted administrative remedies with respect to his excludability."). There, the Ninth Circuit found the government's argument that the INA requires exhaustion to be meritless, because the petitioner's due process claim did not implicate the INA.

Here, Petitioners' due process claims, as opposed to claims asserting a statutory entitlement to asylum, falls outside the INA's scope. Because Petitioners' application does not implicate the INA, their challenge to their sudden detention does not require them to exhaust any administrative remedies prior to seeking judicial relief for due process violations. As such, the Court finds jurisdiction over Petitioners' claims to be proper.

### 2. The *Winter* Factors Support Granting Petitioners' Renewed Application

The Court now turns to the *Winters* factors to determine whether a TRO should issue. Petitioners primarily argue that without "a notice of violation, an opportunity to be heard, a notice of intent to remove [then] to a third country, or a non-refoulement examination before a neutral adjudicator," ICE cannot revoke their orders of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

recognizance and detain them indefinitely. (Renewed Application at 5-7). Without this Court's intervention, Petitioners fear they "will be removed imminently to Mexico, Honduras, or Uganda in violation of respondents' non-refoulement obligations" despite their stated "fear[s] of persecution and torture in the[se] three countries." (*Id.* at 7-8).

***Likelihood of success on the merits.*** Petitioners are likely to succeed on the merits of their Fifth Amendment procedural due process claims. Under the Due Process Clause of the Fifth Amendment, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Although ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after a noncitizen is released from custody, they have a protected liberty interest in remaining out of detention. *See Romero v. Kaiser*, WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his Court joins other courts of this district facing facts similar to the present case and finds Petitioner raised serious questions going to the merits of his claim that due process requires a hearing before an IJ prior to re-detention."); *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond.").

Because Petitioners have a protected liberty interest, the Court must apply the three-part test established in *Mathews v. Eldridge* to determine what procedures are constitutionally sufficient to protect her liberty interest. In deciding what process is due, courts consider: "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements." *Mathews v. Eldridge*, 424 U.S. 319, 321 (1976).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

      **a)     Liberty Interest**

The first factor heavily favors Petitioners. "Freedom from imprisonment" is the Due Process Clause's lodestar. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). As stated above, Petitioners He and Qiao entered the United States seven and two years ago, respectively. (Chen Declaration for Petitioner He ¶ 4; Chen Declaration for Petitioner Qiao ¶ 4). Petitioners have a substantial private interest in being out of custody, which includes "having a job, and 'be[ing] with family and friends and to form the other enduring attachments of normal life.'" (Renewed Application at 21). Here, when the government opted to release Petitioners on an order of recognizance, that decision created "an implicit promise," upon which that individual may rely, that their liberty "will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). "Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody, she has a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). The record does not suggest Petitioners violated the conditions of their release, nor have Respondents disputed as much. Release in these instances reflected a "determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017). Thus, absent the government's reversal of this determination, Petitioners have a significant liberty interest in their continued freedom.

      **b)     Risk of Erroneous Deprivation**

The second factor also heavily favors Petitioners. There exists a high risk that the government would erroneously deprive—and already has erroneously deprived—Petitioners' liberty interests absent a "pre-detention hearing in front of a neutral arbiter."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

*Valencia Zapata v. Kaiser*, No. 25-CV-07492-RFL, 2025 WL 2741654, at *10 (N.D. Cal. Sept. 26, 2025). Civil immigration detention is permissible only to prevent flight or reduce the risk of danger to the community. *See Zadvydas*, 533 U.S. at 690–91. With the release of Petitioners following their detention upon entering the United States, it was necessarily determined by the government that they presented no risk of flight risk or danger to the community. Moreover, the risk of wrongful deprivation is particularly high in this case given the evidence that Petitioners appear to have complied with the terms of their release via their routine ICE check-ins. (Chen Declaration for Petitioner He ¶ 9; Chen Declaration for Petitioner Qiao ¶ 7). There is no evidence to the contrary.

    **c)**     **Government's Interest**

The final factor also weighs in favor of Petitioners. Like other district courts have determined, the government's interest in re-detaining Petitioners without a pre-detention hearing is slight, "because [the government] previously made the determination to release [her], and there is no evidence in the record of any changed circumstances [for the government] to reconsider its [previous] determination." *Valencia Zapata*, 2025 WL 2741654, at *11 (collecting cases).

Because all three *Mathews* factors favor Petitioners, the Court concludes that Petitioners have demonstrated a likelihood of success on the merits on their procedural due process claims.

***Irreparable harm.*** "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). As explained above, Petitioners have likely been unlawfully re-detained. "The Ninth Circuit has recognized 'irreparable harms imposed on anyone subject to immigration detention' including 'the economic burdens imposed on detainees and their families as a result of

detention.'" *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). The Court thus finds that Petitioners will be immediately and irreparably harmed by the continued deprivation of their liberty.

> ***Balance of equities and public interest.*** Finally, the balance of the equities and public interest analyses "merge when the government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). "Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, [] the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020) (quotations omitted). Moreover, the public's interest "in the efficient allocation of government's fiscal resources favors granting" the TRO here. *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017). With the "staggering" price to the public of immigration detention, *id.,* the public has a strong interest in ensuring its taxpayer dollars are not used for detention in obvious disregard of controlling federal law. *See Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) ("[N]either equity nor the public's interest are furthered by allowing violations of federal law to continue.").

### III.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Petitioners' Renewed Application and **ORDERS** as follows:

> 1. Respondents are enjoined from detaining Petitioners unless they are provided with a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that Petitioners are a flight risk or a danger such that their physical custody is required;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

2. Petitioners are not required to secure a bond, as the government has provided no evidence of costs it will incur in releasing Petitioners. *See Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) ("[A court] may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining [their] conduct.");

3. Respondents are enjoined from relocating Petitioners outside of the Central District of California pending final resolution of this matter;

4. Respondents are **ORDERED** to show cause in writing no later than three (4) days from the date of this Order why the Court should not issue a preliminary injunction. Petitioners may file a Reply no later than six (7) days from the date of this Order;

5. A hearing on whether a preliminary injunction should be issued is set for **January 16, 2026, at 2:30 p.m.**; and

6. The Parties shall meet and confer and file a joint status report regarding the Respondents' compliance with this Order on or before January 14, 2026. The joint status report shall also address whether the habeas petition is moot.[2]

**IT IS SO ORDERED.**

---

[2] The Court will accept a stipulated briefing schedule extending these dates on the condition that the parties agree to an extension of the temporary restraining order.